WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Discovery Land Company LLC,<br><br>Plaintiff,<br><br>v.<br><br>Discovery Global LLC, et al.,<br><br>Defendants. | No. CV-20-01940-PHX-MTL<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, Alternatively, Motion to Stay. (Doc. 14.) For the following reasons, the motion is granted. The Complaint is dismissed for lack of personal jurisdiction; Plaintiff may move for leave to amend.

**I.   BACKGROUND**

Plaintiff Discovery Land Company LLC ("Plaintiff" or "Discovery Land") is a full-service real estate development company specializing in private residential club communities and resorts in the United States and abroad. (Doc. 1 ¶ 4.) It is a Delaware limited liability company with a principal place of business in Scottsdale, Arizona.[1] (*Id.* ¶ 7.) Plaintiff owns two federal trademark registrations, both of which are attached to the Complaint. (*Id.* ¶ 13–16; Docs. 1-2, 1-3.)

Defendants Discovery Global, LLC ("Discovery Global") and Discovery Global

---

[1] Various brands operate under Plaintiff's umbrella, including Discovery Design, LLC; Discovery Home Services, LLC; Discovery Builders, LLC; and a magazine titled *Discovery Life*. (*Id.* ¶ 5.)

Management Services, LLC ("Discovery Global Management Services") (collectively, "Defendants") were founded in late 2019 as an anticipated joint business venture between Plaintiff and non-party Denton House Interiors, Inc. ("Denton House"). (*Id.* ¶ 20.) Defendants are Delaware limited liability companies with principal places of business in Utah. (*Id.* ¶¶ 8, 9.)

Prior to Defendants' formation, Rebecca Buchan, the founder and CEO of Denton House, contacted Michael Meldman, Plaintiff's founder and CEO. Although the Complaint does not specify that Mr. Meldman resides and works in Arizona, Plaintiff's counsel asserted as much at oral argument. Ms. Buchan "proposed that Denton House and Plaintiff collaborate on certain international development projects using the Discovery brand." (*Id.* ¶ 22.) Mr. Meldman "believed a collaboration operating under Plaintiff's umbrella would be successful given the value of the Discovery brand, his reputation in the industry and Denton House's familiarity with Plaintiff's business practices." (*Id.*) Plaintiff contributed "substantial resources" to Defendants' creation, including "(i) financial resources; (ii) the time and efforts of its employees including, but not limited to, Tom Collopy and Tom Hogan; (iii) Plaintiff's marketing materials; and (iv) the Discovery marks." (*Id.* ¶ 24.)

The anticipated joint venture ultimately fell apart. The Complaint states that Mr. Meldman informed Ms. Buchan that "neither he nor Plaintiff would be joining this new venture and that Discovery Global was not authorized to use the Discovery name as its brand and could no longer use Plaintiff's marketing materials to procure business." (*Id.* ¶ 28.) Plaintiff asserts that despite this "clear direction," Defendants "continue to operate in violation of Plaintiff's marks and use Plaintiff's copyrighted materials in violation of its intellectual property rights." (*Id.* ¶ 30.) Plaintiff also asserts that Defendants are "misrepresenting to others" that they are authorized to use Plaintiff's proprietary customer list and database. (*Id.* ¶ 38.)

On August 17, 2020, Discovery Global and Denton House filed suit against Discovery Land in the Third Judicial District Court in Salt Lake County, Utah, for breach of the Independent Contractor Agreement governing the attempted business venture, and

for a declaratory judgment that they had "not misappropriated Discovery Land's name, marks, or misstated the parties' affiliation in connection with the joint venture or otherwise." (Doc. 14 at 6.) That case remains pending at the time of filing.

Plaintiff filed its Complaint in the present case on October 5, 2020, asserting claims of trademark infringement, unfair competition and false designation of origin under the Lanham Act, trademark infringement and trademark dilution under Arizona law, common law trademark infringement and unfair competition, misappropriation of trade secrets, and unjust enrichment.[2] (Doc. 1 at 11–18.)

Defendants filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure on November 3, 2020. (Doc. 14.) Defendants also moved, alternatively, to stay the present case while the Utah state court action remains pending. The motion is fully briefed. (Docs. 16, 20.) The Court heard oral argument on January 12, 2021. (Doc. 24.)

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The plaintiff bears the burden to show that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). "[I]n the absence of an evidentiary hearing," a plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal citation omitted). When examining whether there is a prima facie showing of jurisdictional facts, any "uncontroverted allegations in [the complaint] must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citations omitted).

---

[2] Plaintiff has also filed a Motion for Preliminary Injunction (Doc. 15), which the Court does not address in the present Order.

- 3 -

**III.   DISCUSSION**

    **A.   Personal Jurisdiction Overview**

Generally, if a relevant federal statute does not provide for personal jurisdiction, a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Arizona's long-arm statute conforms with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a);[3] *see also A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569 (1995). The analyses of personal jurisdiction under Arizona law and federal due process are, therefore, the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id*. at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).

Plaintiff concedes that Defendants are not subject to general jurisdiction. (Doc. 16 at 5.) Accordingly, the Court addresses Defendants' specific jurisdiction argument.

    **B.   Specific Personal Jurisdiction**

The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum

---

[3] Arizona's long-arm statute states that a court "may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a).

>or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs but subsequently shifts to the defendant to show the third. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

In cases involving tortious conduct, the first required element, "purposeful direction,"[4] is measured using the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). Courts have noted that focusing on the "effects" of a defendant's actions "can be misleading," as "something more" is required for specific personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006). That "something more" is whether the defendant's conduct was "expressly aimed" at the forum; the "proper question is not where the plaintiff experiences a particular injury or effect but

---

[4] Although "purposeful availment" is often used as shorthand to mean both purposeful availment and purposeful direction, they are distinct concepts requiring distinct tests. *Schwarzenegger*, 374 F.3d at 802. The precise analysis depends on the type of claim brought. "[F]or claims sounding in tort, [the Court] appl[ies] a purposeful direction test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1212. Here, the parties agree that the "effects" test is the proper inquiry based on Plaintiff's allegations. (Doc. 14 at 16; Doc. 16 at 1.)

whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

### 1. Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Accepting Plaintiff's allegations as true, Defendants committed intentional acts by infringing on Plaintiff's trademarks and other intellectual property. (*See* Doc. 1 ¶¶ 2, 6, 30, 31, 38.) These allegations are the basis of Plaintiff's claims. Defendants do not argue that Plaintiff has failed to establish the first prong. (Doc. 16 at 17.) *Calder*'s first part is satisfied.

### 2. Express Aiming

The "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state." *Picot*, 780 F.3d at 1214 (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)) (internal quotation marks omitted). Defendants argue that Plaintiff has not demonstrated express aiming because a "defendant's connection to the forum state through the plaintiff alone is insufficient to confer specific jurisdiction." (Doc. 16 at 17) (citing *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, No. CV-19-04684-PHX-JJT, 2020 WL 263617, at *4 (D. Ariz. Jan. 17, 2020)). For the following reasons, the Court agrees with Defendants.

In *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court emphasized that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. at 285. Two principles drive this inquiry. First, the relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)). Second, a court must examine "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. As a result, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286. In *Axiom Foods*, the Ninth Circuit clarified

that, post-*Walden*, a plaintiff can no longer show that a defendant expressly aimed at the forum state by alleging only that the defendant knew of the plaintiff's forum connections and could have reasonably foreseen the harm in that forum. 874 F.3d at 1069–70. *See also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 n.5 (9th Cir. 2020) ("In *Walden*, the Supreme Court rejected our prior decisions holding that the express aiming element could be satisfied by a defendant's knowledge that harm may be inflicted on a plaintiff in a particular forum.").

Here, the Complaint asserts that Defendants are subject to personal jurisdiction in this District because they "purposefully and intentionally directed communications to Plaintiff and others within this District"; sent "communications from this District claiming the right to use the Discovery marks"; and have "held themselves out to third parties as affiliated" with Plaintiff, intending to "cause confusion and disrupt the business of Plaintiff and to cause harm in this District." Defendants have also made "malicious" communications that were "directed to and intended to harm Plaintiff in this District, as Plaintiff's activities are controlled in this District"; misappropriated Plaintiff's trademarks, "which Plaintiff manages and controls in this District"; have caused harm and have been unjustly enriched "in this District"; and have systematically misappropriated, pirated, and wrongfully used Plaintiff's intellectual property that "is managed and controlled in this District." (Doc. 1 ¶ 12(a)–(e).) Plaintiff's briefing also asserts that "there is no doubt that the parties are intimately familiar with each other" and that Ms. Buchan, "and thus Defendants, undoubtedly knew of the nature, location, and geographical scope of Plaintiff's business when it engaged in the alleged intentional conduct." (Doc. 16 at 7-8.) These facts "indicate that Defendants purposely directed their actions at the state of Arizona." (*Id*. at 8.)

These allegations are not enough to establish personal jurisdiction. First, although Plaintiff need only establish a *prima facie* showing of jurisdictional facts, this requirement "is not toothless*." In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). A plaintiff "cannot simply rest on the bare allegations of its complaint" to establish personal

jurisdiction. *Id.* (citing *Schwarzenegger*, 374 F.3d at 800). Without more, the Court will not construe the Complaint's bare allegations, including that Defendants intended to cause harm, have caused harm, and misappropriated Plaintiff's intellectual property, as sufficient to demonstrate personal jurisdiction. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.").

Further, Plaintiff's allegations are not sufficient under *Walden* and *Axiom Foods*. As Defendants note, "[n]one of the anticipated joint venture projects are located in Arizona. Plaintiff has not identified any solicitations, advertising or marketing materials directed to customers in Arizona." (Doc. 16 at 7.) As a result, "the only part of this dispute that has any contact with Arizona is Plaintiff's domicile." (*Id.*) But under Supreme Court precedent, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

The Court is specifically not persuaded by the allegations involving Ms. Buchan. As examples, Plaintiff asserts that Ms. Buchan "(in the past) worked closely with Plaintiff and its affiliate," and that she proposed to Mr. Meldman that "Denton House and Plaintiff collaborate on certain international development projects using the Discovery brand." (Doc. 1 ¶ 22; Doc. 16 at 7.) Ms. Buchan is not a party to this lawsuit, however. *See Burger King Corp.*, 471 U.S. at 475 (personal jurisdiction must arise out of contacts that the "defendant *himself*" creates with the forum state). Further, although for "purposes of personal jurisdiction, the actions of an agent are attributable to the principal," at no point does the Complaint allege that Ms. Buchan acted as Defendants' agent. *Sher*, 911 F.2d at 1362.

Plaintiff also relies on its own contribution of "substantial resources" to the creation of the proposed business venture. (Doc. 1 ¶ 24.) But "Plaintiff's actions are irrelevant to establishing personal jurisdiction over Defendant." *Sciara v. Campbell*, No. 2:18-CV-01700-DJA, 2019 WL 8128162, at *6 (D. Nev. Sept. 27, 2019). Instead, the focus of the

personal jurisdiction inquiry is "on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc.*, 874 F.3d at 1068 (citing *Walden*, 571 U.S. at 283–84). This is not a proper basis for asserting jurisdiction over Defendants.

Plaintiff also asserts that Defendants used its marks and materials to obtain business; Plaintiff specifically cites to the "Amaala" project based in Saudi Arabia. Mr. Meldman and Ms. Buchan initially discussed "using the new prospective venture" to develop the project. (Doc. 15-1 ¶ 36.) Plaintiff asserts that the "Amaala" contract was "originally sourced" by Tom Collopy, Plaintiff's Chief Development Officer, in Arizona. (Doc. 15-2 at 7-8.) The Court does not find this allegation to involve conduct "expressly aimed" at Arizona by Defendants. Due process requires that a defendant not be "haled into court" based on the "random, fortuitous, or attenuated contacts [it] makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475) (internal quotation marks omitted). The only alleged significance of Arizona in this instance is that it is Plaintiff's, and therefore Mr. Collopy's, place of business. To subject Defendants to jurisdiction in Arizona on this basis would "improperly attribute[] a plaintiff's forum connections to the defendant" and "obscure[] the reality that none of [Defendants'] challenged conduct had anything to do with [Arizona] itself." *Id*. at 289.[5]

The Court also does not find Plaintiff's authorities to be persuasive. Plaintiff relies

---

[5] Plaintiff also "incorporates by reference" various "infringing uses," described in the declaration of Mr. Meldman attached to Plaintiff's Motion for Preliminary Injunction, but not separately addressed in Plaintiff's Opposition to the Motion to Dismiss or the Complaint. (Doc. 16 at 2; Doc. 15-1.) They include a July 28, 2020 letter from Defendants to Premium Luxury Integrated Resorts with a mark "mimicking" Plaintiff's composite mark and Plaintiff's actual mark; August 2020 emails from Ms. Buchan to Dolphin Capital, a "United Kingdom/Greek financial firm," with a signature block linking to Plaintiff's website; a September 14, 2020 email from Ms. Buchan to Denton House and Defendants' employees "outlining Defendants' intention to solicit work in relation to the [Plaintiff]-sourced Mayflower project"; and an email expressing confusion from the CEO of the Amaala project. (Doc. 15-1 ¶¶ 54–58.) While the Court makes no findings as to the import of these "infringing uses" for Plaintiff's substantive claims, in no way do these allegations indicate conduct "expressly aimed" at Arizona. *See Calder*, 465 U.S. at 789.

on *United Truck & Equip., Inc. v. Curry Supply Co.*, No. CV08-01046-PHX-GMS, 2008 WL 4811368, (D. Ariz. Nov. 5, 2008), in which the court found personal jurisdiction where the defendant "undoubtedly knew of the nature, location, and geographical scope of [plaintiff's] business when it engaged in the alleged intentional conduct that is the subject of this suit." *Id*. at *7. It that case, brought for claims of trademark violations, copyright infringement, unfair competition, and false advertising, the court concluded that the "competitive relationship between the parties and [defendant's] knowledge of the nature, scope, and location of [plaintiff's] operations leads to the conclusion that [defendant] purposefully directed its intentional acts at the state of Arizona." *Id*. at *8. Plaintiff similarly argues that in the present case, the parties' history, Defendants' knowledge of Plaintiff's geographical scope, and Plaintiff's allegations, "lead to the conclusion that Defendants purposefully directed its intentional acts at the state of Arizona." (Doc. 16 at 9.) But given the subsequent rulings in *Walden* and *Axiom Foods*—neither of which is referenced in Plaintiff's briefing—the Court is not convinced. The Ninth Circuit has specifically since stated that an argument that relies "on the strength of [plaintiff's] own forum connections, coupled with evidence suggesting [defendants] knew of those connections," is no longer sufficient. *Axiom Foods, Inc.*, 874 F.3d at 1069. "*Walden* requires more," and Plaintiff has not made such a showing. *Id*. The Court further notes that every other case cited by Plaintiff in support of this argument also pre-dates *Walden* and *Axiom Foods*. (Doc. 16 at 8.) For the same reason, these cases are not persuasive.

      For all of these reasons, the Court finds that Defendants could not "have reasonably foreseen that they would be haled into Arizona's courts" based on Plaintiff's allegations. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 523 (9th Cir. 1989). Because Plaintiff has failed to meet at least the second prong of *Calder*'s "effects" test, the Court lacks specific jurisdiction over Defendants. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law.") (citation omitted). The Court will grant Plaintiff's motion to dismiss for lack of personal jurisdiction.

The Court will accordingly not consider Defendants' alternative argument to stay the present case while the Utah state court case remains pending. (Doc. 14 at 20–21.)

### C. Amendment

At oral argument, Plaintiff's counsel alternatively requested the opportunity to amend the Complaint, should Defendants' motion be granted.[6] Defendants' counsel objected on grounds that amendment would be futile. Federal Rule of Civil Procedure 15(a)(2) requires the Court to "freely give leave when justice so requires." Leave need not be granted, however, "where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Case law is "not definitive" on whether Rule 12(b)(2) motions should be granted with leave to amend. *State Narrow Fabrics, Inc. v. Fisher*, No. 16-4252 MWF (RAOX), 2016 WL 11002147, at *6 (C.D. Cal. Nov. 29, 2016). Some courts have permitted leave to amend when sufficient facts may exist to establish personal jurisdiction. *See, e.g., Regal Art & Gifts, Inc. v. Fusion Prod., Ltd.*, No. 15-CV-04363-KAW, 2016 WL 454116, at *8 (N.D. Cal. Feb. 5, 2016) ("At this juncture, the facts pled against Defendant Menard, Inc. are sufficient to put Menard on notice of the claims against it, but are insufficient to support the exercise of personal jurisdiction under Rule 12(b)(2). Plaintiff, however, is granted leave to amend, because the Court believes that sufficient facts exist."); *Joudeh v. Beck*, No. CV-17-02744-PHX-DLR, 2018 WL 3364653, at *3 n.1 (D. Ariz. July 10, 2018)

---

[6] Plaintiff's counsel also requested the opportunity to conduct limited jurisdictional discovery regarding Plaintiff's customer database at oral argument. Limited jurisdictional discovery may be granted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc.*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)). Denial of jurisdictional discovery is appropriate when based on a "hunch" or "mere belief" that it could demonstrate sufficient contacts. *See Boschetto*, 539 F.3d at 1020; *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986). The Court does not find that Plaintiff has demonstrated more than a belief that jurisdictional discovery would demonstrate sufficient contacts with Arizona, and as such denies the request at this time.

(granting a Rule 12(b)(2) motion and permitting defendants to renew a Rule 12(b)(6) motion "[i]n the event Plaintiffs amend their complaint to adequately allege a basis for personal jurisdiction"). Others have stated that a complaint dismissed under Rule 12(b)(2) "is not curable by amendment." *Wild W. Guns, LLC v. Superior Ammunition, Inc.*, No. 3:18-CV-00043 JWS, 2019 WL 885915, at *1 (D. Alaska Feb. 23, 2019); *see also Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 344 (N.D. Cal. 2020) (same).

The Court finds, particularly given that Plaintiff has not previously amended the Complaint, that it remains conceivable that Plaintiff may be able to allege a basis for personal jurisdiction. Should it choose to do so, Plaintiff may file a motion to amend the Complaint that complies with Local Rule of Civil Procedure 15.1.

Lastly, the Court is aware of Plaintiff's pending Motion for Preliminary Injunction (Doc. 15) and the oral argument presently set for March 23, 2021. (Doc. 19.) The Court will address these, and any other issues, should they remain relevant following any forthcoming motion to amend.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, Alternatively, Motion to Stay (Doc. 14) and dismissing the Complaint (Doc. 1) for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff may file a motion for leave to amend that complies with LRCiv 15.1 no later than **14 days** from the date of this Order. The Clerk of the Court is directed to terminate this case without further order of the Court if Plaintiff does not do so.

Dated this 15th day of January, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge